IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

ROCK HILL DIVISION

| | |
|---|---|
| Charles Wayne Clinton, as personal representative of the Estate of Ricky Clinton; Charles Wayne Clinton, individually, | ) )  C/A No. 0:13-1085-MBS ) ) ) |
| Third-Party Plaintiffs, | ) ) |
| vs. | )  **ORDER AND OPINION** ) |
| American National Property and Casualty Company, | ) ) ) |
| Third-Party Defendant. | ) ) |

The within action was commenced by SPARTA Insurance Company ("SPARTA") on April 23, 2013, against Smarr's Tree Service, LLC ("STS"); John B. Smarr ("Smarr"); Charles Wayne Clinton, as personal representative of the Estate of Ricky Clinton; Charles Wayne Clinton, individually (together "Clinton"); and Alison Clinton. SPARTA sought a declaration from the court that its commercial insurance policy issued to STS did not provide coverage for a collision that resulted in the death of Ricky Clinton. On July 18, 2013, Clinton filed a third-party complaint against American National Property and Casualty Company ("ANPAC"), seeking to recover under an automobile insurance policy held by Smarr (the "Policy"). On September 20, 2013, ANPAC filed an answer and counterclaim seeking a declaration as to any sums owed under the Policy.

On November 15, 2013, the parties filed a stipulation of dismissal as to all first party defendants. Thereafter, on December 13, 2013, Clinton filed a motion for summary judgment as to the third-party complaint. ANPAC filed a cross-motion for summary judgment on January 9, 2014.

Also on January 9, 2014, ANPAC filed a response in opposition to Clinton's motion for summary judgment. Clinton filed no response in opposition to ANPAC's motion. On February 3, 2014, Clinton filed a motion to supplement the record with excerpts from the deposition of Smarr. On February 4, 2014, ANPAC filed a motion to supplement the record seeking to supplement the record with the Smarr's deposition. Both motions were granted, and on February 28, 2014 ANPAC filed Smarr's deposition.

The court has reviewed the entire record and the applicable law. The court concludes that Clinton's motion for summary judgment should be granted, ANPAC's motion for summary judgment should be denied, and the third-party complaint dismissed, with prejudice.

## I. FACTS

ANPAC issued to Smarr the Policy, which was a family automobile policy covering the period from August 7, 2011 to February 7, 2012. See ECF No. 19-1. The Policy included coverage for a 1989 Ford F-350 Super Duty pickup truck (the "Ford"), and included bodily injury liability in the amount of $250,000. The Policy further provided an exclusion from liability "while any vehicle is used to carry persons or property for a charge." Id. at 30. The Ford is used primarily by Smarr for farm work. Answer, ¶ 9, ECF No. 10.

Smarr is in the business of trimming and cutting trees from commercial and private property in the York, South Carolina, area. Smarr apparently did business as Smarr's Tree Service commencing in 2003. In 2008, Smarr converted his business to STS, a limited liability company. Smarr is the sole member of the limited liability company. See ANPAC Mot. for Summ. J., 1 ECF No. 33. STS's customers typically request that the property be cleared of the debris that is created in during the job, such as chips, brush, firewood, or logs. Dep. of John Smarr, 9, 18, ECF No. 41.

In those cases, STS charges the customer for the cost of clearing the debris in addition to the cost of cutting and trimming. The cost for clearing debris comprises a substantial portion of the cost of the tree service. Id. at 18. STS generally gives away the chips and firewood, and if the logs appear to have some value, will sell them to a sawmill for lumber. Id. at 18-20.

On January 31, 2012, Smarr and his employees were engaged in cutting trees at a number of properties. Id. at 10. Smarr was using a bucket truck and a chip truck that were owned by STS and insured by SPARTA, as well as the Ford insured by ANPAC. Id.; see also ECF No. 33, 2. Smarr felled a number of logs and loaded them onto the Ford for transport to the sawmill. Id. at 20. One of the employees commenced driving the Ford south on U.S. 321 near Clover, South Carolina. At approximately 6:15 p.m., the Ford became disabled in the left-most of the two south-bound lanes. Around 6:30 p.m., Ricky Clinton, who also was traveling south on U.S. 321, struck the Ford from behind and sustained bodily injuries that resulted in his death. See Compl., ¶¶ 6-13, ECF No. 1-1.

## II. DISCUSSION

The question presented is whether, at the time of the collision, the Ford was being "used to carry . . . property for a charge" so as to be excluded from coverage under the Policy. Clinton asserts that the court should construe the Policy with reference to legally significant definitions of the words "carry" and its noun form, "carrier," as well as the phrase "for compensation," as set forth in S.C. Code Ann. §§ 58-23-10, et seq. In this regard, the South Carolina Legislature has defined a "motor vehicle carrier" as "every corporation or person . . . owning, controlling, operating or managing any motor propelled vehicle, not usually operated on or over rails, used in the business of transporting persons or property for compensation over any improved public highway in this State[.]" Id. § 58-23-10(4). "For compensation" means "a return in money or property for transportation of persons

or property by motor vehicle over public highways, whether paid, received or realized[.]" Id. § 58-23-30. According to Clinton, the Ford is not a motor vehicle that is "used in the business of transporting persons or property for compensation," and therefore the exclusion does not apply.

Although the court finds instructive the definitions crafted by the Legislature in promulgating a statutory scheme for regulating motor vehicle carriers, the court need not look beyond the plain meaning of the Policy to find in favor of Clinton. "'Insurance policies are subject to the general rules of contract construction. The cardinal rule of contract interpretation is to ascertain and give legal effect to the parties' intentions as determined by the contract language. Courts must enforce, not write, contracts of insurance, and their language must be given its plain, ordinary, and popular meaning.'" Preservation Capital Consultants LLC v. First Am. Title Ins. Co., 751 S.E.2d 256, 259 (S.C. 2013) (quoting Whitlock v. Stewart Title Guar. Co., 732 S.E.2d 626, 628 (2012)). Policies are construed in favor of coverage, and exclusions in an insurance policy are construed against the insurer. Walde v. Association Ins. Co., 737 S.E.2d 63, 635 (S.C. Ct. App. 2012) (quoting M & M Corp. of S.C. v. Auto-Owners Ins. Co., 701 S.E.2d 33, 35 (S.C. 2010)).

"Carry" means "to take from one place to another; transport." http://www.thefreedictionary.com/carry (found June 6, 2014). "Compensation" means "something, such as money, given or received as payment or reparation, as for a service or loss." http://www.thefreedictionary.com/compensation (found June 6, 2014). In this case, the Ford was "carrying" logs to a sawmill for sale. However, the logs were not carried "for compensation." Rather, Smarr and STS were utilizing the Ford to transport STS's own property.

The court finds support for its finding in Bovain v. Canal Ins., 678 S.E.2d 422 (S.C. 2009). In that case, an insured was hauling logs to a paper mill when his logging truck was hit from behind

4

by the plaintiff's wife, resulting in her death. The plaintiff filed a declaratory judgment action against the insurer of the logging truck, asserting that the insured was a "motor carrier" subject to regulation pursuant to S.C. Code Ann. §§ 58-23-10, et seq. The trial judge granted summary judgment in favor of the insurer, finding that the insured was not a motor carrier. Rather, according to the trial judge,

> [The insured] cuts trees, picks up trees that have been cut and abandoned to him by other tree services, and hauls and sells those trees to pulpwood and paper companies. When he sells the trees, he receives their market value, not a fee for handling them as cargo. [The insured] is transporting and selling his own property and is not subject to regulation as a motor carrier for hire.

Bovain, 678 S.E.2d at 426.

The South Carolina Supreme Court reversed. The supreme court determined that the insured transported logs for the benefit of a timber dealer. The facts established that monies for the logs were credited to the timber dealer, who paid the insured the sales price less a percentage or "brokerage fee" that remained with the timber dealer. The insured sold the logs in the name of the timber dealer, the mills paid the timber dealer, and the timber dealer directed the insured as to which mills to sell. Id. The supreme court found that the timber dealer was the true seller, and that the insured was being compensated to transport the logs to the sawmill. Under these circumstances, the insured was a "motor carrier" within the meaning of section 58-23-10(4).

Unlike the scenario described by the supreme court in Bovain, the logs collected by STS incident to removing trees on the date of the accident were abandoned to STS by the owners of the various properties. STS was compensated for trimming and cutting trees as well as clearing the debris; the decision of what to do with the chips, brush, firewood, and logs was Smarr's decision. There is no evidence that any owner directed STS as to how to dispose of the debris, or that any

5

owner received compensation from the sale of any portion of the debris, as was the case in Bovain. The court concludes that, on the day of the accident, STS utilized the Ford to "carry" its own property to the sawmill for sale. Therefore, the transportation of the logs was not "for compensation." See Smith v. Harmonia Fire Ins. Co., 199 S.E. 698 (S.C. 1938) (insured transporting six persons to a ball game for thirty-five cents each to defray cost of gas and oil was "carrying passengers for compensation" and thus fell within exclusion). The exclusion does not apply.

### III.  CONCLUSION

For the reasons stated, Plaintiffs' motion for summary judgment (ECF No. 28) is **granted**. ANPAC's motion for summary judgment (ECF No. 33) is **denied**. The court declares that the Policy does provide additional liability insurance coverage over and above the statutory minimum limits for the January 31, 2012 accident that is the subject of the underlying state court complaint. The third-party complaint and counterclaim are dismissed, with prejudice.

**IT IS SO ORDERED**.

/s/ Margaret B. Seymour
Senior United States District Judge

Columbia, South Carolina

June 10, 2014.